UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO A.,<br><br>                                    Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>                                    Defendant. | Case No.:  3:19-cv-00846-AHG<br><br>**ORDER RESOLVING JOINT MOTION FOR JUDICIAL REVIEW AND REMANDING FOR IMMEDIATE AWARD OF BENEFITS**<br><br>**[ECF No. 13]** |

On November 26, 2019, Ricardo Acero ("Plaintiff") and Andrew Saul (Commissioner of Social Security) ("Commissioner") filed a Joint Motion for Judicial Review of Final Decision of the Commissioner of Social Security ("Joint Motion") pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision by the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits. ECF No. 13.

After a thorough review of the parties' submissions, the administrative record, and applicable law, the Court **REVERSES** the Commissioner's denial of disability insurance benefits and **REMANDS** for the calculation and award of benefits.

\\

\\

1

## I.   **PROCEDURAL BACKGROUND**

On October 26, 2015, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, alleging disability beginning October 1, 2012. *See* Certified Administrative Record ("AR") 43, ECF No. 8-2. Plaintiff's application was initially denied on March 21, 2016. AR 83-93. After Plaintiff retained an attorney, his application was again denied upon reconsideration on April 29, 2016. AR 94-103, 112. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on May 10, 2016, and the hearing was held before the ALJ on January 9, 2018. AR 119-120, 61-82.

On April 4, 2018, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled as defined by the Social Security Act, and accordingly denying disability insurance benefits. AR 40-56. The Appeals Council affirmed the ALJ's decision on March 27, 2019, (AR 1-6), making the ALJ's opinion the final decision of the Commissioner. *See* 42 U.S.C. § 405(h). On May 6, 2019, Plaintiff timely commenced the instant appeal seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). ECF No. 1.

## II.   **SUMMARY OF ALJ'S FINDINGS**

The ALJ determined Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. AR 46. Thereafter, the ALJ performed the required five-step sequential evaluation process governing DIB claims under the Social Security Act: (1) whether the claimant is involved in substantial gainful activity; (2) whether the claimant has an impairment or combination of impairments that is "severe"; (3) whether the claimant's impairments meet or equal one of the listed impairments; (4) whether the claimant can still perform his past relevant work given his residual functional capacity despite his impairment(s); and (5) if the claimant cannot perform past relevant work, whether the claimant can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4). The five steps are addressed in order, but the ALJ is not always required to go through all five steps of the

process. Specifically, an affirmative answer at steps one or four (whether the claimant is currently engaged in substantial gainful activity or can perform past relative work), or a negative answer at step two (whether the claimant has an impairment or combination of impairments that is severe), would immediately lead to a finding of non-disability, and the analysis would stop there. Conversely, an affirmative answer at step three (whether the claimant's impairments meet a listing) would immediately lead to a finding of disability, also ending the analysis. *Id. See also Garfield v. Schweiker*, 732 F.2d 605, 607 n.2 (7th Cir. 1984).

However, the ordinary five-step analysis is altered where, as here, there is medical evidence of the claimant's drug abuse or alcoholism. In that case, even if the ALJ has found the claimant disabled under the five-step inquiry, the ALJ must also conduct a drug abuse and alcoholism analysis ("DAA analysis") to determine whether the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(a). The key factor in the DAA analysis is whether the claimant would still be found disabled if he stopped using drugs or alcohol, by evaluating which of the claimant's current physical and mental limitations upon which the disability finding was based would remain if the claimant stopped his drug or alcohol use. 20 C.F.R. § 404.1535(b)(1)-(2). If those remaining limitations would not be disabling, the ALJ will conclude the claimant's drug or alcoholism is a "contributing factor material to the determination of disability" and will accordingly find the claimant not disabled. *Id. See also Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007). However, the ALJ must conduct the five-step inquiry without considering the impact of alcoholism or drug addiction before turning to the DAA analysis. *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).

In the case at hand, at step one of the five-step process, the ALJ was required to determine whether Plaintiff engaged in substantial gainful activity ("SGA") from his alleged disability onset date of October 1, 2012 through the date last insured of December 31, 2015. 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both

substantial and gainful. 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities." C.F.R. § 404.1572(a). "Gainful work activity is work activity that you do for pay or profit." C.F.R. § 404.1572(b). The ALJ concluded Plaintiff did not engage in SGA from the alleged onset date through the date last insured. AR 46.

At step two, the ALJ must determine whether Plaintiff has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(c). A "severe" impairment is one that significantly limits physical or mental ability to do basic work activities. *Id.* The ALJ concluded the Plaintiff had the following "severe" impairments: drug abuse disorder; mood disorder, not otherwise specified, with psychotic and paranoid features; and degenerative disc disorder. AR 46.

At step three, the ALJ must determine whether Plaintiff's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I ("the listings"). The listings describe impairments that the Social Security Agency ("SSA") considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant's impairment may also be considered "medically equivalent" to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). If a claimant's impairments meet or medically equal any of the listings, the ALJ will find the claimant disabled. *See* 20 C.F.R. § 404.1520(d).

Here, the ALJ concluded Plaintiff's mental impairments met the listing in section 12.04 of Appendix I, which describes depressive, bipolar, and related disorders. AR 46. A claimant's impairment may meet listing 12.04 if the criteria of Paragraphs A and B *or* the criteria of both Paragraphs A and C of the listing are met. In this case, the ALJ concluded that Paragraph A of listing 12.04 was satisfied due to Plaintiff's mood disorder characterized by depressed mood, diminished interest in almost all activities, sleep disturbance, decreased energy, feelings of guilt or worthlessness and difficulty

concentrating or thinking. AR 46. The ALJ also found Paragraph B to be satisfied because the Plaintiff had "marked" limitations in three of the four categories of mental functioning: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.[1] AR 47. Therefore, because Plaintiff's impairments met a listing, the ALJ found that Plaintiff was disabled at step three of the five-step inquiry. AR 47-48.

However, because there was medical evidence of Plaintiff's drug abuse during the claimed period of disability, the ALJ did not end the inquiry there, instead turning to the requisite DAA analysis. AR 48. The SGA analysis at step one being unaffected, the ALJ first returned to step two to consider whether Plaintiff would continue to have a severe impairment or combination of impairments if he had stopped the substance abuse. The ALJ answered that question in the affirmative, concluding that Plaintiff's impairments of degenerative disc disease and mood disorder, not otherwise specified, with psychotic and paranoid features, would remain severe even without the drug use. AR 48.

At step three, the ALJ concluded that, if he had stopped the substance use, Plaintiff's impairments would no longer meet a listing. Specifically, the ALJ found that all of Plaintiff's limitations in the areas of mental functioning under Paragraph B of listing 12.04 would be reduced from marked to "mild" and "moderate," thus no longer meeting the criteria of the listing under both Paragraphs A and B. AR 49-50. The ALJ also found that the Paragraph C criteria were not met. AR 50. Thus, because the ALJ determined that Plaintiff's impairments would not meet or medically equal a listing if he had stopped the substance use, the ALJ proceeded to the next step of the DAA analysis.

Before considering whether Plaintiff could perform past relevant work at step four, the ALJ must first determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). A claimant's RFC is ". . . the most [the claimant] can still do despite [his]

---

[1] If a claimant has at least one extreme limitation or two marked limitations in any area of mental functioning under Paragraph B, the criteria are satisfied.

1    limitations." 20 C.F.R. § 404.1545(a)(1); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th

2    Cir. 2017). A claimant's RFC is based on all relevant evidence in the case record. *Id.*

3         Based on his evaluation of the medical and opinion evidence in the record, the ALJ

4    determined that, if Plaintiff had stopped the substance use, through the date last insured,

5    Plaintiff would have the RFC "to perform medium work as defined in 20 C.F.R.

6    404.1567(c) except occasional contact with supervisors and co-workers and no public

7    contact." AR 50. In reaching this conclusion, the ALJ found that although Plaintiff's

8    medically determinable impairments could reasonably be expected to produce his alleged

9    symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effects

10   of the symptoms of his mental impairments—i.e., hearing voices that told him to harm

11   himself, forgetfulness so severe that Plaintiff would forget to go to work or have to pull

12   over while driving to remember where he was going, inability to perform even simple work

13   without social interaction due to memory issues—were "not entirely consistent with the

14   objective medical and other evidence[.]" AR 51.

15        The ALJ gave a few reasons for this finding. First, the ALJ noted that despite

16   Plaintiff's assertion that his mental impairment caused his termination from his last job in

17   October 2012, he waited three years (until October 2015) to seek mental health treatment.

18   AR 52. Second, the ALJ found that Plaintiff's treatment records prior to October 2015

19   show appropriate mood and affect, normal insight, normal judgment, and normal or only

20   mildly impaired memory. AR 52 (citing to treatment records from the San Ysidro Health

21   Center between April and June 2015 concerning a head and back injury caused by a fall

22   from a ladder, as well as treatment records from Kaiser Permanente between November

23   2011 and May 2012, prior to Plaintiff's alleged disability onset date). Third, the ALJ noted

24   that when Plaintiff first began mental health treatment only "a couple of months before the

25   date last insured[,]" he reported "only a 30-day period of sobriety" at that time, and that

26   the period of sobriety "occurred due to the claimant's incarceration, which suggests his

27   incarceration was likely the reason for his sobriety." AR 52-53. Finally, although the

28   treatment notes of Plaintiff's treating psychiatrist, Dr. Gregory Paniccia, did tend to support

Plaintiff's statements regarding the severity of his symptoms, the ALJ noted that Dr. Paniccia's records were internally inconsistent, and that Dr. Paniccia appeared not to consider that Plaintiff's substance abuse "was not in any sustained remission for the period before his date last insured (December 31, 2015), and that his symptoms materially could be attributed to his drug abuse disorder." AR 52. Therefore, the ALJ did not fully credit Plaintiff's statements in determining the severity of Plaintiff's mental limitations for purposes of the RFC analysis.

Because the ALJ's consideration of Dr. Paniccia's opinion is central to Plaintiff's arguments in the joint motion, the Court will discuss that portion of the ALJ's decision discounting Dr. Paniccia's opinion in more detail.

In his Mental Residual Functional Capacity Assessment ("MRFCA") submitted in connection with Plaintiff's disability application, Dr. Paniccia opined that Plaintiff had marked limitations in a number of areas of mental functioning, including two of the three areas of functioning within the "understanding and memory" category, six of the eight areas of functioning under "sustained concentration and persistence," and two of the five areas of functioning under "social interaction." *See* AR 401-402. Dr. Paniccia also stated that these limitations existed before Plaintiff's date last insured of December 31, 2015. AR 402. In the narrative section of the MRFCA, Dr. Paniccia expounded on his opinions in each area of social functioning. First, with respect to understanding and memory, Dr. Paniccia stated that Plaintiff's "mind goes blank in the middle of a sentence" and that he would not be able to remember work-like locations/procedures or detailed instructions. AR 403. In the area of sustained concentration and persistence, Dr. Paniccia opined that Plaintiff would be limited to simple instructions, would not be able to maintain attention or concentration for extended periods of time, would not be able to follow a schedule, maintain regular attendance, or be punctual, could not sustain a routine without supervision, and could not work in close proximity to others without being distracted due to paranoia and hearing voices, and accordingly could not work a standard workday or workweek at a consistent pace even with breaks. AR 403-404. In the social interaction area

of functioning, Dr. Paniccia posited that Plaintiff would have difficulty interacting with the public, accepting instructions, or responding to criticism from supervisors due to his paranoia and auditory hallucinations, and that his psychosis and behavior of pulling out his arm and leg hair when anxious would distract coworkers. AR 404. Finally, in the area of adaptation, Dr. Paniccia opined that Plaintiff would have difficulty negotiating changes in the workplace or taking proper precautions because of a "psychotic level of anxiety," and would be somewhat limited in his ability to set realistic goals; nonetheless, Dr. Paniccia suggested only moderate limitations in this area. AR 404.

As touched on above, the ALJ gave Dr. Paniccia's opinions "little weight," on the basis that they "largely ignore the drug abuse issue." AR 53. In particular, the ALJ found that Dr. Paniccia's treatment records "do not appear to consider the possibility that the claimant's drug abuse was not in remission and likely contributed in a material way to the severity of the claimant's symptoms before his date last insured." AR 54. Moreover, because Dr. Paniccia only began treating Plaintiff on October 23, 2015—approximately two months before Plaintiff's date last insured of December 31, 2015 and more than three years after Plaintiff's alleged disability onset date of October 1, 2012—the ALJ discounted Dr. Paniccia's assessment for the additional reason that it "speculates without foundation as to the claimant's mental status before the treating period." AR 54. Therefore, the majority of the mental limitations suggested by Dr. Paniccia were not incorporated into Plaintiff's RFC. Instead, the ALJ gave "substantial weight" to the assessments of the SSA's non-examining psychological consultants, which "found insufficient proof before the date last insured of a disabling impairment without drug abuse." AR 53. Accordingly, as already explained, the ALJ found that all of Plaintiff's mental limitations would be only mild or moderate if he had stopped the drug use, and formulated Plaintiff's RFC based on that determination.

At step four, the ALJ had to determine whether, given his RFC, Plaintiff could perform his relevant past work as an autobody repairer. *See* 20 C.F.R. § 404.1520(f); AR 54. Based on the testimony of the vocational expert ("VE") at the January 9, 2018 hearing

8

on Plaintiff's application, the ALJ found that Plaintiff's RFC would make him unable to perform the autobody repairer job. AR 54; *see also* AR 74-75 (testimony of the vocational expert that the autobody repairer job requires "a lot of contact with everybody, including all the coworkers and supervisors and even customers[,]" and that someone with an RFC limiting him to occasional contact with coworkers and supervisors and no public contact whatsoever could not perform that work).

At step five, the burden shifted to the ALJ to determine whether Plaintiff could perform any other work considering his RFC, capacity, age, education and work experience. 20 C.F.R. § 404.1520(g). To meet that burden, the ALJ must establish evidence Plaintiff could perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c). Here, based on the VE testimony and Plaintiff's RFC, the ALJ concluded that Plaintiff could perform jobs existing in the national economy, including the jobs of laundry worker, hand packager, and garment marker. AR 55, 75. Accordingly, the ALJ found that Plaintiff would not be disabled during the relevant time period if he had stopped the substance use, and therefore Plaintiff's substance use disorder was a contributing factor material to the determination of disability. Consequently, the ALJ found Plaintiff not disabled.

## III.   **STANDARD OF REVIEW**

The Court reviews the Commissioner's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied and, if so, the Court must affirm the Commissioner's decision. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

"Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). In evaluating whether the

Commissioner's decision is supported by substantial evidence on appeal, the Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, and is also responsible for resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the decision was based on legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

## IV.    **PARTIES' POSITIONS**

Plaintiff stipulates to the ALJ's summary of the medical evidence, except the ALJ's statement that "Dr. Paniccia's treatment records do not appear to consider the possibility that the claimant's drug abuse was not in remission and likely contributed in a material way to the severity of the claimant's symptoms before his date last insured." ECF No. 13 at 2. Plaintiff argues there is insufficient evidence to support the ALJ's decision that drug abuse was a contributing factor material to the determination of disability. *Id.* Plaintiff's argument on this point is tied entirely to the ALJ's treatment of the opinion of his treating psychiatrist, Dr. Paniccia.

Plaintiff argues that, in making the determination on the materiality of Plaintiff's substance abuse to the disability determination, the ALJ failed to follow the "treating physician rule." This rule requires the ALJ to give controlling weight to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory

10

techniques" and is "not inconsistent with the other substantial evidence in the case record." *Id.* at 3-4 (quoting 20 C.F.R. § 404.1527(c)(2)). Plaintiff cites to Ninth Circuit law that a treating physician's opinion may be rejected "only for 'clear and convincing' reasons supported by substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). *See also Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Plaintiff argues the ALJ did not meet this standard, and instead "substituted his opinion of functioning" for the opinion of the treating physician. ECF No. 13 at 4.

Arguing that the ALJ did not reject Dr. Paniccia's opinion for clear and convincing reasons here, Plaintiff challenges the ALJ's "primary basis" for rejecting Dr. Paniccia's opinion, namely, Plaintiff's history of substance use and the fact he was only thirty days' sober when Dr. Paniccia first treated Plaintiff in October of 2015. *Id.* Plaintiff argues that Dr. Paniccia's opinion should not have been discounted for that reason, because Dr. Paniccia continued to treat Plaintiff for over two years prior to providing his opinion in connection with Plaintiff's benefits application in December 2017. *Id.* Plaintiff asserts that he maintained sobriety throughout that period, which Dr. Paniccia would have known when providing his MRFCA. *Id.* at 5. As for the ALJ's finding that Dr. Paniccia did not appear to consider the possibility that Plaintiff's substance abuse was not in remission, Plaintiff counters that "[a]lthough Dr. Paniccia's records do not mention drugs, the absence of any mention of drugs is a statement in itself. Plaintiff testified he is drug-free and has been since his release from prison [in 2015]." *Id.* at 1-2.

Additionally, Plaintiff notes that during the initial five-step inquiry, the ALJ relied on Dr. Paniccia's opinions to support his findings of marked impairments in three of the four categories of mental functioning under Paragraph B of listing 12.04, and to accordingly conclude at step three that Plaintiff was disabled with the substance use disorder. *Id.* at 3. However, Plaintiff notes that Dr. Paniccia's opinions are dated December 12, 2017, and January 10, 2018, "over two years after Plaintiff got sober." *Id.*

In sum, Plaintiff argues that the ALJ relied solely on Dr. Paniccia's records to determine Plaintiff was disabled while using drugs, discredited those same records in finding that Plaintiff would not be disabled if the substance abuse stopped, and improperly assigned little weight to the "uncontradicted" treating physician's opinion, in violation of the treating physician rule. ECF No. 13 at 1-4.

In response, Defendant asserts that Plaintiff has "fail[ed] to establish that the ALJ committed reversible error in attributing little weight to Dr. Paniccia's opinion." ECF No. 13 at 4 (internal citation omitted). First, Defendant disagrees with Plaintiff's assertion that Dr. Paniccia's opinion is uncontradicted. *Id.* at 9-10. Rather, the ALJ gave non-examining physicians Dr. Mendelson and Dr. Weiss's opinions "substantial" weight, because both reviewed Plaintiff's records and concluded there was "insufficient evidence of a disabling mental impairment without drug abuse." *Id.* Because Dr. Paniccia's opinion is contradicted by Dr. Mendelson and Dr. Weiss, Defendant contends the ALJ need not provide clear and convincing reasons for assigning it little weight, since the Ninth Circuit has only applied the "clear and convincing" standard to ***uncontroverted*** medical opinions of a treating physician. *Id.* at 4 n.1. Rather, Defendant argues, the ALJ need only set forth "specific and legitimate" reasons to reject a treating physician's opinion. *Id.* at 4-5 (citing *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012)). Regardless, Defendant asserts that the ALJ's reasons suffice under either standard. ECF No. 13 at 4 n.1.

Specifically, the Commissioner argues that the ALJ gave four[2] "specific and legitimate reasons" why Dr. Paniccia's opinion was properly assigned little weight: (1) Dr.

---

[2] In the Joint Motion, the Commissioner actually enumerates five reasons given by the ALJ for rejecting Dr. Paniccia's opinion. However, the third and fourth reasons are the same: that Dr. Paniccia did not treat Plaintiff for the majority of the relevant time period, only beginning treatment three years after the alleged disability onset date, and that Dr. Paniccia "did not begin treating Plaintiff until the tail end of Plaintiff's eligibility period for DIB." ECF No. 13 at 7-8. Because the "relevant time period" is the time between Plaintiff's alleged disability onset date and his date last insured, the Court has combined these reasons in its analysis.

1 Paniccia's treatment records are both internally inconsistent and inconsistent over time;

2 (2) the medical evidence is inconsistent with Dr. Paniccia's assessment of marked

3 limitations in mental functioning; (3) Dr. Paniccia did not treat Plaintiff for the majority of

4 the relevant time period, beginning treatment three years after the alleged disability onset

5 date and only two months before the end date of Plaintiff's eligibility period for DIB; and

6 (4) Dr. Paniccia did not appear to consider Plaintiff's "longstanding history of drug abuse,

7 recent sobriety, and the impact this may have had on Plaintiff's functioning." ECF No. 13

8 at 5-8. In addition, the Commissioner argues that Plaintiff fails to challenge on appeal all

9 but one of the ALJ's given reasons for assigning Dr. Paniccia's opinion little weight (the

10 DAA analysis), and Plaintiff has thus waived any challenge to the uncontested reasons. *Id.*

11 at 9.

12    For the reasons discussed below, the Court finds the ALJ committed reversible error

13 in rejecting Plaintiff's treating physician's opinion.

14    **V.    <u>DISCUSSION</u>**

15    Critical to the ALJ's determination that substance abuse was a material contributing

16 factor to Plaintiff's disability was the ALJ's decision to assign "little weight" to treating

17 physician Dr. Paniccia's opinion. The Court has reviewed the decision and concludes the

18 ALJ committed legal error in his analysis. Because the ALJ's legal error impacted the

19 ALJ's ultimate disability decision, the error warrants reversal of the ALJ's decision.

20    **A. <u>The Treating Physician Rule</u>**

21    Plaintiff contends the ALJ's decision to afford the opinion of treating physician,

22 Gregory Paniccia, M.D., "little weight" was legal error and not supported by substantial

23 evidence. ECF No. 13 at 2-4. A treating physician's opinion is ordinarily entitled to

24 controlling weight because a treating physician "is employed to cure and has a greater

25 opportunity to know and observe the patient as an individual." *McAllister v. Sullivan*, 888

26 F.2d 599, 602 (9th Cir. 1989). Specifically, the medical opinion of a claimant's treating

27 physician is given "controlling weight" so long as it "is well-supported by medically

28 acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in [the plaintiff's] case record." 20 C.F.R. § 404.1527(c)(2). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

As a preliminary matter, the parties dispute whether Dr. Paniccia's opinion is contradicted or uncontradicted by another physician(s). Plaintiff claims that Dr. Paniccia's records were the only medical evidence in the record, and that his opinion "was the only opinion considered." ECF No. 13 at 2, 4. While unclear, it seems that Plaintiff later refines this argument by asserting that Dr. Paniccia's records constitute "the only evidence of treatment prior to the Date Last Insured." *Id.* at 4. Neither of these assertions is entirely accurate. Dr. Paniccia's treatment records were not the only medical evidence considered by the ALJ, nor was his opinion the only one considered. As already discussed, the ALJ also considered opinions of state agency psychological consultants, James Mendelson, Ph.D. and Hillary Weiss, Ph.D (who did not treat Plaintiff, but who based their opinions on all of the medical evidence of record), and cited to the treatment records of other medical providers as evidence of Plaintiff's mental state before October 2015, although those records were not from mental healthcare providers. Nonetheless, it would be accurate to say that Dr. Paniccia's records are the only medical evidence from a treating source who treated Plaintiff's mental impairments.

In the SSA's Disability Determination Explanation denying Plaintiff's DIB application at the initial level in March 2016, the SSA non-examining physician Dr. Mendelson specifically addressed Dr. Paniccia's records and diagnoses, stating, "[Dr. Paniccia's] records are not reliable in that they only cover a small portion of the time leading up to his [date last insured of December 31, 2015], and are internally inconsistent." AR 91. Dr. Mendelson also gave the opinion, which the ALJ later included in his own decision, that Dr. Paniccia "does not appear to have given much consideration to the possibilities that the claimant is not in substance abuse remission and that his symptoms could be also explained in terms of a Substance Induced Mood [Disorder] arising within

the context of an Antisocial Personality [Disorder], or that [drug addiction/alcoholism] might be material to his case." AR 91. At the reconsideration level, Dr. Weiss adopted the initial decision upon review of the record, although she did not provide any independent analysis of the reliability of Dr. Paniccia's opinion. AR 100, 101.[3]

Therefore, Dr. Paniccia's opinion is not uncontroverted. "'[I]f the treating doctor's opinion is contradicted by another doctor,' the ALJ may discount the treating physician's opinion by giving 'specific and legitimate reasons' that are supported by substantial evidence in the record." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Lester*, 81 F.3d at 830) (applying this rule where the treating physician's opinion was contradicted by the reports of two non-examining physicians). However, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. Rather, opinions of non-examining physicians may only serve as substantial evidence "when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

To determine whether the ALJ met this standard, the Court will address, in turn, each reason given by the ALJ for discounting Dr. Paniccia's opinion.

### B. Whether the finding that Dr. Paniccia's treatment records are "internally inconsistent" is a specific and legitimate reason supported by substantial evidence

First, in attributing only "little weight" to Dr. Paniccia's opinion, the ALJ states Dr. Paniccia's reports are "internally inconsistent." AR 52. The ALJ offers several instances of purported inconsistency: (1) "[f]or example, the claimant's mood was listed as euthymic

---

[3] Notably, the state agency psychological consultants provided their opinions early in the application process, more than a year before Dr. Paniccia formally submitted his MRFCA setting forth his opinion for the ALJ's consideration in December 2017 (amended in January 2018). *See* AR 347-350, 400-404.

at times and depressed or anxious at other times" (AR 52) (internal citations omitted); (2) "The claimant's thought processes were described as logical, coherent, and normal, yet also delusional" (AR 52) (internal citations omitted); (3) "[t]he [plaintiff's] judgement was described as normal, but the [plaintiff] reported he thought he was being watched and followed and he indicated he would pull out his arm and leg hair when anxious." AR 52 (internal citations omitted).

The Court finds the ALJ's first example of "inconsistency" is not supported by substantial evidence. The ALJ cites to records from two separate visits to illustrate the purported inconsistency. Specifically, on October 23, 2015, Dr. Paniccia listed plaintiff's mood as "unremarkable (euthymic)" (AR 313). Nearly a month later, on November 20, 2015, Plaintiff's mood is listed as "anxious and depressed." AR 311. There is nothing inconsistent about a person's mood being unremarkable one day, but anxious and depressed four weeks later. Therefore, Dr. Paniccia's observation that Plaintiff's mood changed over a period of four weeks is not a legitimate reason supported by substantial evidence in the record for rejecting the opinion.

The ALJ's second and third examples refer to purportedly internally inconsistent observations in same-day treatment records. First, the ALJ notes that Dr. Paniccia listed Plaintiff's thought process as both "logical, coherent, and normal" and "delusional" on the same day. During another visit, Dr. Paniccia's records indicate Plaintiff's judgment was "normal," while also noting that Plaintiff had thoughts of "being watched and followed." AR 309, 313. While these examples of inconsistency might suffice to justify discounting the opinion in some circumstances, they are unconvincing here for several reasons. First, the ALJ is required to examine these inconsistencies in broader view of Dr. Paniccia's opinion. *See, e.g.*, *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws."); *Martinez v. Berryhill*, 721 F. App'x 597, 599 (9th Cir. 2017) ("The ALJ erred in disregarding [the treating physician's] opinion . . . . The ALJ isolated two treatment notes that reflected some improvements, rather than considering the treatment records as a whole,

which showed the severity of [the claimant's] condition and supported [the treating physician's] opinion."); *Ingram v. Barnhart*, 72 F. App'x 631, 636 (9th Cir. 2003) ("Rather than address these opinions [of two examining physicians that the claimant's limitations would not abate with sobriety], the Commissioner searched the record for isolated statements which, when taken out of context, suggest that [claimant's] DAA is material to her disability.").

In *Holohan*, the ALJ rejected a treating physician's opinion because it conflicted with the physician's own treatment notes. However, the court explained:

> Although such a conflict could justify a decision not to give the treating physician's opinion controlling weight, *see* 20 C.F.R. §§ 404.1527(c)(2), (d)(2), (d)(4), in this case there is not substantial evidence in the record to support the reason the ALJ gave for rejecting [the treating physician's] opinion. ***When read in full and in context***, [the treating physician's] treatment notes are consistent with his opinion letter. Because substantial evidence does not support the specific reason the ALJ gave for rejecting [the treating physician's] opinion concerning the question of Holohan's disability, we conclude that the ALJ erred in rejecting [the treating physician's] opinion.

*Id.* (emphasis added). The same holds true here.

When read in full and in context, Dr. Paniccia's treatment notes are not internally inconsistent. For example, the treatment notes characterized by the ALJ as internally inconsistent because they described Plaintiff's thought processes as "logical, coherent, and normal, yet also delusional" also describe Plaintiff's "[s]poradic paranoia" and explain that Plaintiff "hears voices four times per month when depressed." AR 311. These notes indicate that Plaintiff's delusional thinking is not constant. In the Mental Status Exam portion of the records, Dr. Paniccia notated: "Thought Process: delusions, logical/coherent and normal." AR 311. Again, this description is consistent with a patient elsewhere described as having only sporadic paranoia and temporary auditory hallucinations. Similarly, as examples of internal inconsistencies, the ALJ cites to Dr. Paniccia's treatment records describing Plaintiff's judgment as "normal," despite Plaintiff's reports that he "thought he was being watched and followed" and "would pull out his arm and leg hair

17

when anxious." AR 52 (citing to AR 309 and 313). However, those treatment notes—from two separate visits—specifically state that Plaintiff experiences "*[s]poradic* paranoia of family members talking about him[,]" that he "[h]ears voices of neighbors *at night*," that he reported "pulling out arm and leg hairs *over the last few months*[,]" and that he was "[p]aranoid of being followed on the freeway *2-3 months ago*." AR 309, 313 (emphasis added). None of these reports is inconsistent with Dr. Paniccia's description of Plaintiff's *current* judgment as "normal" in the Mental Status Exams that took place during the appointments with Dr. Paniccia.

The ALJ's reasons for discounting Dr. Paniccia's opinion are also not "legitimate" because, earlier in the ALJ's opinion, he relies solely on Dr. Paniccia's records in his analysis of whether Plaintiff is disabled *with the substance abuse*. In finding that Plaintiff was disabled while using drugs, the ALJ cites almost exclusively[4] to Dr. Paniccia's treatment records and MRFCA as evidence of Plaintiff's marked limitations in three of the four areas of functioning under Paragraph B, apparently fully crediting the very same records he later gives little weight due to these purported internal inconsistencies. *See* AR 47-48 (citing to Exhibits 5F—Dr. Paniccia's treatment records—and 7F—Dr. Paniccia's MRFCA—in finding that, with the substance abuse, Plaintiff had marked limitations in the areas of interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself). The ALJ never explains this apparent and inscrutable conflict between the controlling weight given to the records in one portion of his analysis and the little weight given later. This internal inconsistency in the ALJ's opinion casts serious doubt on the legitimacy of the ALJ's reasons for discounting Dr. Paniccia's opinion in the DAA analysis. *See Leroux v. Berryhill*, No. 17-CV-00452-SI, 2018 WL 1258206, at

---

[4] The ALJ also cites once to Plaintiff's testimony that he was terminated from his last job because he could not remember to go to work. AR 47. Otherwise, all citations supporting the ALJ's findings of marked limitations are to Dr. Paniccia's treatment records and opinion.

*9 (N.D. Cal. Mar. 12, 2018) (finding the ALJ's rejection of a treating physician's opinion to be "internally inconsistent with the ALJ's other findings" where the ALJ relied on the treating physician's "2013 assessment in order to determine the materiality of plaintiff's substance abuse and then rejected her assessment from June 2014" but "offered no explanation for this inconsistency.").

### C. **Whether the ALJ erred in performing the DAA analysis**

As discussed above, in the DAA analysis, the ALJ must determine whether drug addiction or alcoholism is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(a). *See also, e.g.*, *Bender v. Saul*, 788 F. App'x 490, 491 (9th Cir. 2019) (finding claimant was not disabled because consistent and daily use of marijuana was a material contributing factor to his disability). The key factor in determining materiality is whether the claimant would still be found disabled if the drug use stopped. 20 C.F.R. § 404.1535(b)(1); *see also Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001). If the DAA analysis determines disabling limitations would remain if the applicant had stopped using drugs or alcohol, substance abuse is not a material contributing factor and the applicant is entitled to benefits. *Parra v. Astrue*, 481 F.3d 742, 744–45 (9th Cir. 2007).

The Ninth Circuit has held that courts must not "fail [ ] to distinguish between substance abuse contributing to the disability and the disability remaining after the claimant stopped using drugs or alcohol." *Richey v. Colvin*, No. C 12-4988 LB, 2013 WL 5228185, at *1 (N.D. Cal. Sept. 17, 2013) (citing *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998)). Said differently, "[j]ust because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability will too." *Id.* Once evidence is presented of drug abuse, the burden shifts to the claimant to show substance abuse is not a material contributing factor to his disability. *Astrue*, 481 F.3d at 744-45.

Plaintiff argues the ALJ erred by relying on Dr. Paniccia's failure to properly consider the effects of Plaintiff's substance abuse as a reason for rejecting Dr. Paniccia's opinion. ECF No. 13 at 1, 3. Specifically, in deciding to give Dr. Paniccia's opinion little weight in determining whether Plaintiff's substance abuse was a material factor

contributing to Plaintiff's disability, the ALJ reasoned:

> Furthermore, ***and very importantly***, it appears the treating psychiatrist did not consider that the claimant's substance abuse was not in any sustained remission for the period before his date last insured (December 31, 2015), and that his symptoms materially could be attributed to his drug abuse disorder. Once again, the claimant had admitted only 30 days' sobriety to this source on October 23, 2015.

AR 52 (emphasis added).

Based on this reasoning, the ALJ gave "little weight" to Dr. Paniccia's opinions because they "largely ignore the drug abuse issue[,]" reiterating that Dr. Paniccia's treatment records "do not appear to consider the possibility that the claimant's drug abuse ***was not in remission*** and likely contributed in a material way to the severity of the claimant's symptoms before his date last insured." AR 54 (emphasis added).

However, there is no record evidence that Plaintiff's drug abuse was not in remission for 30 days on October 23, 2015, when Plaintiff first met with Dr. Paniccia, and the ALJ does not explain the basis for this speculation. Indeed, the ALJ's heavy reliance on Dr. Paniccia's treatment records and opinions in the earlier portion of his analysis regarding Plaintiff's limitations ***with the substance abuse*** necessitates the conclusion that the ALJ assumed, without any evidentiary basis, that those treatment records were from a time when Plaintiff was using drugs. But there is no evidence in the record that Plaintiff was not 30 days' sober on October 23, 2015, or failed to maintain his sobriety since then, and the ALJ cites to none. Indeed, the ALJ's own language is not consistent in pinpointing Plaintiff's date of sobriety, first stating that the claimant "had admitted only 30 days' sobriety" on October 23, 2015, but later speculating that Plaintiff's drug abuse was possibly not in remission during the treatment period at all, which Dr. Paniccia supposedly failed to account for. AR 52, 54. The ALJ appears to have overlooked that in each of Dr. Paniccia's treatment notes after October 2015, in the DSM-IV Multi-Axial Assessment, Dr. Paniccia states: "Other psychoactive substance dependence, ***in remission***," which indicates that Plaintiff was not abusing drugs during those times. AR 308, 310, 312, 354, 356, 358, 360,

362, 364, 366, 368, 370, 372, 374, 376, 378, 380, 382, 384, 386, 388, 390, 392, 394, 396, 398.

Social Security Ruling 13-2p governs how ALJs should evaluate cases involving DAA. *See* SSR 13-2p, 2013 WL 621536 (S.S.A. Feb. 20, 2013). There, the Agency explains that it is "unable to provide exact guidance on the length and number of periods of abstinence to demonstrate whether DAA is material in every case" because in some cases, "the acute and toxic effects of substance use or abuse may subside in a matter of weeks, while in others it may take months or even longer to subside." *Id.* at \*12. Thus, because of the "wide variations in the interactions of DAA with different types of physical and mental disorders[,]" the Agency provides the following guidance:

> In all cases in which we must consider periods of abstinence, the claimant should be abstinent long enough to allow the acute effects of drug or alcohol use to abate. Especially in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated. Adjudicators may draw inferences from such information based on the length of the period(s), how recently the period(s) occurred, and whether the severity of the co-occurring impairment(s) increased after the period(s) of abstinence ended.

*Id.* Although the Agency has no bright-line rule about the length of a period of sobriety required to demonstrate whether DAA is material to a disability determination, the Ninth Circuit has relied on the Social Security Administration's internal Programs Operations Manual System ("POMS") to find that a claimant's drug addiction "should not be considered material" where a claimant has been sober for one month but still has disabling impairments. For example, in *Ingram*, the Ninth Circuit explained:

> Although the Social Security Administration's Program Operation Manual System (POMS) lacks the force of law, the POMS directs that an individual should not be considered disabled if 'the evidence documents that, after a drug-free period of 1 month, the other impairment(s) is by itself not disabling.' POMS § DI 90070.050(D)(3). ***The logical inference is that if, after a drug-[]free period of one month, the other impairments are still disabling, the individual's drug and alcohol addiction should not be considered material***.

3:19-cv-00846-AHG

*Ingram*, 72 F. App'x at 636 n.30 (emphasis added). *See also McKee v. Comm'r of Soc. Sec. Admin.*, 446 F. App'x 36, 38 n.1 (9th Cir. 2011) (quoting and citing POMS § DI 90070.050(D)(3) and *Ingram* for the same proposition that there is a "logical inference" that a claimant's drug or alcohol addiction should not be considered material if the claimant's other impairments are still disabling after a one-month drug-free period); *Richey*, 2013 WL 5228185, at *16-*17 (relying on *Ingram*, *McKee*, POMS § DI 90070.050(D)(3), and the DSM-IV to find that "[i]f any period of sobriety is required in order to make a determination, the above sources indicate that a period of one month is sufficient[,]" and thus concluding the ALJ erred by rejecting the treating physician's opinion in favor of a nonexamining physician's opinion that "18 months of abstinence is required before a reliable assessment [of the materiality of claimant's substance abuse to his disability] could occur.").

Here, as discussed above, the ALJ relied exclusively on Dr. Paniccia's records, MRFCA, and Plaintiff's testimony to find Plaintiff disabled ***with the substance abuse*** at step three of his evaluation. *See* AR 47. But all of this evidence is from a time period when Plaintiff was at least 30 days' sober, not from a time when there is any evidence that Plaintiff was using drugs. "Adjudicators should generally not rely on a medical opinion to find that DAA is material if the case record contains credible evidence from an acceptable medical source from a relevant period of abstinence indicating that the impairment(s) would still be disabling in the absence of DAA." SSR 13-2p, 2013 WL 621536, at *9. Additionally, "[t]o find that DAA is material, [the ALJ] must have evidence in the case record demonstrating that any remaining limitations were not disabling during the period [of abstinence]." *Id.* at *12. The ALJ pointed to no such evidence, and in fact initially found Plaintiff's mental limitations documented by Dr. Paniccia during a period of abstinence to be disabling at step three.

Moreover, even if the treating physician's records had been from a period when Plaintiff was still using drugs—which is not supported by the record—the law does not require a claimant to produce records from a period of abstinence to establish that his drug

abuse was not material to his disability. *See id.* at \*4 ("There does not have to be evidence from a period of abstinence for the claimant to meet his or her burden of proving disability."); *Richey*, 2013 WL 5228185, at \*16-\*17 (finding the ALJ erred by requiring a sustained abstinence period). As in *Richey*, the ALJ here erred by rejecting the treating physician's opinion in favor of the opinions of two non-examining physicians on the basis that Plaintiff had reported only a 30-day period of sobriety when he first met with Dr. Paniccia, and Dr. Paniccia's opinions "do not appear to consider the possibility that the claimant's drug abuse was not in remission," thereby improperly applying a period of abstinence requirement. AR 54.

Therefore, the ALJ's reasoning that Dr. Paniccia's opinion should be given little weight either because Dr. Paniccia failed to consider the possibility that Plaintiff was still using drugs, or otherwise that Plaintiff's 30-day period of sobriety was insufficient to gauge whether Plaintiff's mental impairments were still disabling absent drug abuse, is not supported by substantial evidence in the record and is contrary to controlling law.

For the same reasons, the Court is also not persuaded by Defendant's argument that "Dr. Paniccia had no knowledge of Plaintiff's condition during the majority of the alleged disability period" because he did not begin treating Plaintiff until three years after the alleged disability onset date and two months before the date last insured. ECF No. 13 at 7-8. Although Dr. Paniccia's MRFCA opinions were submitted in December 2017 and January 2018, and Dr. Paniccia primarily treated Plaintiff after his date last insured of December 31, 2015, these facts actually strengthen Dr. Paniccia's opinions as evidence of whether Plaintiff's previous substance abuse was a material factor contributing to his disability. *See Kroeger v. Saul*, No. 18-CV-00389-SI, 2019 WL 4451025, at \*12-\*13 (N.D. Cal. Sept. 17, 2019). In *Kroeger*, the ALJ refused to consider a sustained period of sobriety that occurred after the alleged period of disability to determine whether the plaintiff's mental impairments would have remained in the absence of his substance use. *Id.* at \*12. After the court remanded the case and ordered the ALJ to consider the later period of sobriety in the DAA analysis, the ALJ again refused to consider any evidence from after

23

the claimant's date last insured of December 31, 2010:

> Counsel argued that "the period at June 29, 2011 through 2012 is the closest long period of sobriety, so we should actually be looking at that period." The ALJ responded that "if you can't look at the evidence in the live period, then we need to move on." Plaintiff's counsel argued that the "period from 2011 going forward is applicable to the live period because it's the closest longstanding period of sobriety," but the ALJ rejected this argument, stating, "you want me to take a later period and read it back, and I don't think that's appropriate under the regulations and the law."

*Id.* (internal citations omitted) (emphasis added).

Considering this transcript, the *Kroeger* court concluded the ALJ erred a second time, finding that "the ALJ's refusal to 'read back' records from a later period of sobriety to inform whether a claimant was disabled before his Date Last Insured contradicts SSR 13-2p[, which] states: 'Especially in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated. . . . " *Id.* (quoting SSR 13-2p, 2013 WL 621536, at *12). The *Kroeger* court explained that "[n]othing in SSR 13-2p states that an ALJ should only look to periods of abstinence that occur before the 'live period' rather than after." *Kroeger*, 2019 WL 4451025, at *13. And, in a conclusion that applies with equal force here, the *Kroeger* court found that "[e]ven if the ALJ had looked to the later period of sobriety, the fact that plaintiff was found to be disabled even after maintaining sobriety indicates that the ALJ lacked 'evidence in the case record demonstrating that any remaining limitations were not disabling during the period.'" *Id.* (quoting SSR 13-2p, 2013 WL 621536, at *12).

Similarly, in the present case, the ALJ initially found Plaintiff met listing 12.04, and accordingly found him disabled at step three, based on evidence from Dr. Paniccia's opinions and some of Dr. Paniccia's treatment records from a period of abstinence that post-dated the relevant time period. AR 47. Therefore, to the extent the ALJ considered evidence from a period of sobriety, he found that evidence showed that disabling limitations remained. *See* AR 48 (giving Dr. Paniccia's assessments "some weight" in

24

considering Plaintiff's mental impairments, "including the substance use disorder," because Dr. Paniccia's "assessment that the claimant has marked and moderate limitation of his ability to perform work-related activities due to his mental impairments, including the substance use disorder . . . is consistent with the claimant's reported symptoms of hallucinations, paranoia, and pulling of arm and leg hair when anxious."). The ALJ also relied on these behaviors in finding that Plaintiff was disabled with the substance abuse. AR 47. But in reaching this conclusion, the ALJ cited to Dr. Paniccia's treatment records from November 20, 2015—approximately two months after Plaintiff stopped using drugs—and Dr. Paniccia's December 2017 MRFCA. AR 47, 48. The Agency's regulations provide that "[t]he key factor . . . in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled *if you stopped using drugs or alcohol*." 20 C.F.R. § 404.1535(b)(1) (emphasis added). The ALJ did not adhere to that regulation here. More importantly, the ALJ did not point to any evidence "demonstrating that any remaining limitations were not disabling during the period [of abstinence,]" as necessary to find Plaintiff's substance abuse material. SSR 13-2p, 2013 WL 621536, at *12.

Finally, the ALJ's error was not harmless, because it is not "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." *Garcia*, 768 at 932. Had the ALJ properly considered Dr. Paniccia's treatment records as being from a period of sobriety—rather than baselessly relying on them as evidence of the severity of Plaintiff's mental impairments, ***including*** the substance abuse—it appears that the ALJ would have concluded that Plaintiff's mental impairments met listing 12.04 even after Plaintiff's drug use stopped.

Because the Court finds that the ALJ committed legal error in his DAA analysis, the Court need not consider the remaining reasons proffered by Defendant to support a finding that the Commissioner's decision was supported by substantial evidence. Accordingly, the Court will also not address Defendant's argument that Plaintiff has waived the right to challenge any of the ALJ's other reasons for discounting Dr. Paniccia's opinion.

3:19-cv-00846-AHG

## VI.    **THE APPROPRIATE REMEDY**

The next issue for determination is whether a remand for further proceedings, or a remand for payment of benefits, is appropriate. "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of this court." *McAllister*, 888 F.2d at 603. The court "should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Crediting the evidence that was rejected, and considering the record as a whole, it is clear that substance abuse is not a material contributing factor and Plaintiff is entitled to benefits. Dr. Paniccia's October 23, 2015 treatment notes indicate that Plaintiff's psychiatric problems were longstanding. AR 313. His notes state that Plaintiff was arrested in 2000 and 2010/11 for "mania." AR 313. The treatment notes also disclose two suicide attempts in 2010. Dr. Paniccia obviously asked Plaintiff about substance abuse during this visit, since his notes state "In past, used Heroin/Crystal Meth. No ETOH [referring to alcohol]. Clean now for 30 days." AR 313.

Plaintiff's testimony confirms that his substance abuse occurred after the onset of the psychiatric issues that underlie his disability. Plaintiff testified that his drug use did not start until after he was fired from his job in October 2012, the same month as his disability onset date of October 1, 2012. AR 80. *See also* AR 66-67, 75-76. Plaintiff was fired from his job because of his psychiatric issues, including forgetting to go to work, inability to remember where he was going, and hearing voices. AR 66-67.

In each of Dr. Paniccia's treatment notes after October 2015, in the DSM-IV Multi-Axial Assessment, he states: "Other psychoactive substance dependence, in remission," which indicates that Plaintiff was not abusing drugs during those times. AR 308, 310, 312, 354, 356, 358, 360, 362, 364, 366, 368, 370, 372, 374, 376, 378, 380, 382, 384, 386, 388,

3:19-cv-00846-AHG

390, 392, 394, 396, 398. Despite this, Plaintiff's psychiatric problems persisted.

The key factor in the DAA analysis is determining whether a claimant would still be found disabled if his drug use stopped. 20 C.F.R. § 404.1535(b)(1); *see Ball*, 254 F.3d at 921. Here, there is ample evidence in the record to show that Plaintiff's drug use did stop, and that his disability continued. Indeed, the ALJ relied on records that post-dated Plaintiff's drug use by at least 30 days to find in the first part of his analysis that Plaintiff's mental impairments met listing 12.04. AR 47-48. Since those records are from a time period after Plaintiff's drug use stopped, that conclusion dictates a finding of disability. 20 C.F.R. § 404.1520(a)(4)(iii). Because Plaintiff's disabling limitations remained after he stopped using drugs, substance abuse is not a material contributing factor, and there are thus no outstanding issues to be resolved to conclude that Plaintiff is entitled to benefits. *See Parra v. Astrue*, 481 F.3d 742-744-45 (9th Cir. 2007); *Bernecke*, 379 F.3d at 593. Finally, had the ALJ fully credited Dr. Paniccia's opinions from over two years after Plaintiff obtained sobriety (AR 347-350, 401-404), the ALJ would have been required to find Plaintiff disabled. Therefore, pursuant to *Bernecke*, remand for an immediate award of benefits is appropriate. *Id.*

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that the ALJ committed reversible legal error.

Therefore, pursuant to sentence four of 42 U.S.C. § 405(g), **IT IS HEREBY ORDERED** that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for the calculation and award of benefits.

**IT IS SO ORDERED.**

Dated:  July 22, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge